# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

In re:  ANNIE LEE CLAY,       )
                               )
           Debtor.          )     No. 05-3081
                               )
BENEFICIAL ILLINOIS, INC.,  )
d/b/a BENEFICIAL MORTGAGE  )
COMPANY OF ILLINOIS,     )
                               )
         Appellant,     )
                               )
        v.             )Appeal from the
                           )U.S. Bankruptcy Court
ANNIE LEE CLAY,        )Central District of Illinois
                           )Judge Larry Lessen, presiding
         Appellee.     )Bankruptcy Case No. 04-70782

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

Beneficial Illinois, Inc., d/b/a Beneficial Mortgage Company of Illinois (Beneficial), appeals from an Order of the Bankruptcy Court entered March 1, 2005 (Contempt Order), holding it and its attorneys, Larson & Nierling, in contempt for violating the permanent injunction created upon the entry of Appellee Annie Lee Clay's discharge in her Chapter 7 bankruptcy proceeding.  11 U.S.C. § 524(a).  The Court affirms the finding in the Contempt Order as to Beneficial, but reverses the finding against Larson &

Nierling because of insufficient notice.  The Court remands the matter for further proceedings to provide Larson & Nierling with the appropriate notice and a hearing to consider whether the firm should be held in contempt.

## STATEMENT OF FACTS

Clay filed a voluntary Chapter 7 bankruptcy petition on February 24, 2004.  She listed Beneficial as a secured creditor holding a debt secured by a mortgage on real estate owned by Clay.  Bankruptcy Appeal Record (d/e 1)(Record), Exhibit 2, Voluntary Petition, Schedule D.  During the course of the bankruptcy, Beneficial's Bankruptcy Specialists Felicia Brown and Jenaro Ceruantus communicated with Clay's attorney Alan Bourey in an attempt to negotiate a reaffirmation agreement.  Record, Exhibit 14, February 3, 2005, Hearing Exhibit 2.[1]  Ceruantus sent Bourey a draft reaffirmation agreement.  Id.  No agreement was ever reached.  Record, Exhibit 14, Transcript of Proceedings at February 3, 2005, Hearing (Transcript) at 11-15; Hearing Exhibit 2.  The Bankruptcy Court granted Clay a discharge by a discharge order entered on June 7, 2004 (Discharge

---

[1]The exhibits admitted into evidence at the February 3, 2005, hearing have been filed conventionally and are referred to in this Order as "Hearing  Exhibits."

Order).  A discharge order in a Chapter 7 bankruptcy, "operates as an injunction against the commencement . . . of an action, the employment of process, or an act, to collect, recover or offset, any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2) (Permanent Injunction). The only remedy for violations of the Permanent Injunction is an action for contempt.  Cox v. Zale Delaware, Inc., 239 F.3d 910, 916-17 (7th Cir. 2001).

On August 25, 2004, Beneficial filed a complaint to foreclose the mortgage on Clay's property.  Macon County, Illinois, Circuit Court Case No. 2004-CH-286 (Foreclosure Complaint).  Transcript at 17; Hearing Exhibit 3, Complaint to Foreclose Mortgage.  The Foreclosure Complaint named Clay as a defendant and sought a judgment against her personally for any deficiency remaining after completion of a foreclosure sale of the property, as well as attorney fees and costs.  Beneficial was represented by Larson & Nierling in the foreclosure proceeding.

One September 16, 2004, Clay, through her counsel Bourey, filed a Motion to Reopen her bankruptcy proceeding.  Record, Exhibit 3, Motion to Reopen Bankruptcy Case ( Motion to Reopen).  The Motion to Reopen stated that the she wanted to reopen the bankruptcy proceeding in order to

seek an order of contempt against Beneficial for filing and serving the Foreclosure Complaint in violation of the Permanent Injunction.   Her proposed Motion for Adjudication of Contempt (Contempt Motion) was attached as an exhibit.   Clay served Beneficial's counsel, Larson & Nierling, with a copy of the Motion to Reopen.   Id.

On September 23, 2004, the Bankruptcy Court granted the Motion to Reopen and reopened the proceedings.   On September 24, 2004, Clay filed the Contempt Motion.   Record, Exhibit 6.   The Contempt Motion asked the Bankruptcy Court to hold Beneficial in contempt; the Motion did not ask that Larson & Nierling be held in contempt.   On September 30, 2004, Beneficial offered to amend the Foreclosure Complaint to delete the prayer for a deficiency judgment and asked Clay to withdraw the Contempt Motion.   Clay agreed to withdraw the Contempt Motion if Beneficial would pay the attorney fees that she had incurred to date.   Beneficial refused. Record, Exhibit 8, Attachment to Motion to Dismiss.

Beneficial then filed a Motion to Dismiss the Contempt Motion (Motion to Dismiss) for lack of proper service.   Record, Exhibit 7. Beneficial asked for attorney fees because the Court lacked jurisdiction due to the improper service.   Motion to Dismiss at 2.   A hearing was held on

4

October 7, 2004. No member of the firm of Larson & Nierling appeared at the hearing; rather, Beneficial appeared by local counsel, attorney Ed Costa. Bourey appeared for Clay. At the hearing, the parties were given time to brief the Motion to Dismiss.

On the afternoon of October 7, 2004, after the hearing on the Motion to Dismiss, Beneficial moved in Macon County Circuit Court to amend the Foreclosure Complaint to allege: "<u>Name of persons claimed to be liable for deficiency, if any</u>: Annie L. Clay, to the extent not discharged in prior bankruptcy proceeding." <u>Transcript</u> at 9; <u>Hearing Exhibit</u> 4, <u>Motion for Leave to File Amended Complaint to Foreclose Mortgage (Motion to Amend)</u>, ¶ 3(m) (emphasis in the original). The Motion to Amend was set for hearing in Macon County Circuit Court in January 2005. <u>Transcript</u> at 9.

Beneficial filed its Memorandum in Support of the Motion to Dismiss on October 28, 2004. Clay filed her response on November 10, 2004. The Bankruptcy Court entered an Order on December 17, 2004. The Bankruptcy Court denied the Contempt Motion because Clay did not properly serve the Contempt Motion. The Bankruptcy Court, however, also denied the Motion to Dismiss and gave Clay fourteen days to serve the

Contempt Motion properly. Clay then served the Motion to Dismiss properly. <u>Record</u>, Exhibit 12, <u>Order entered December 17, 2004</u>.

On January 6, 2005, Beneficial filed its Response to the Contempt Motion (Response). <u>Record</u>, Exhibit 13, <u>Response to Debtor's Motion for Adjudication of Contempt</u>. Beneficial stated in its Response, "Prior to receipt of the Motion, Beneficial's records include no reference to the pendency of the present action or the entry of the [Discharge Order]." <u>Id.</u> at 1. Beneficial further stated in the Response that "[R]ather than sending notification of case commencement to the address reflected in her mortgage or monthly statement, Clay sent notice to a local Beneficial storefront." <u>Id.</u> Beneficial represented to the Court that "Following receipt of the Motion, Beneficial's foreclosure counsel immediately sought and obtained leave to file an amended foreclosure complaint deleting its prior request for an *in personam* judgment." <u>Id.</u> at 2 (emphasis in the original). Beneficial continued, "Nothing in the Motion suggests that Beneficial's conduct was anything other than a failure to review bankruptcy records to determine whether Clay *might* have commenced a bankruptcy action somewhere in the United States." <u>Id.</u> (emphasis in the original). Beneficial asked the Court to deny the Contempt Motion because Beneficial had acted in good faith,

6

Clay had suffered no damage, and Clay could have avoided incurring attorney fees if she had contacted Beneficial rather than filing the Contempt Motion. Beneficial characterized the Contempt Motion as "nothing more than a fee generating mechanism that benefits no one other than her counsel." Id. at 3.

Also in January 2005, the Macon County Circuit Court allowed the Motion to Amend. Transcript at 9. The Amended Foreclosure Complaint then alleged that Clay was liable for any deficiency, "to the extent not discharged in prior bankruptcy proceeding." Hearing Exhibit 4, Amended Complaint to Foreclose Mortgage, ¶ 3(m).

On January 10, 2005, the Bankruptcy Court held a hearing on the Contempt Motion. Clay and her attorney Bourey appeared. Another local attorney arrived at the hearing for Beneficial. No one from the firm of Larson & Nierling appeared. The local attorney who arrived at the hearing was not prepared and did not enter a written appearance. The Bankruptcy Court granted the attorney's request for a continuance. The Bankruptcy Court continued the matter to February 3, 2005.

On February 3, 2005, the Bankruptcy Court held the third hearing in this matter. Clay and her counsel Bourey appeared. Beneficial appeared by

a third local counsel Heidi Balsley.  Balsley had been contacted for the first time on February 1, 2005, to represent Beneficial at the hearing.  <u>Transcript</u> at 4.  Again, no one from the firm of Larson & Nierling appeared.  Balsley entered an appearance and stated that she was ready to proceed.

Clay then testified.  Clay had listed the address for Beneficial in her initial bankruptcy filings as 3160 North Water, Suite E6, Decatur, Illinois. <u>Record</u>, Exhibit 2, <u>Voluntary Petition, Schedule D</u>.  Clay stated that the address for Beneficial on her mortgage and closing documents was 3160 North Water, Suite E6, Decatur, Illinois.  <u>Transcript</u> at 7.  Clay testified that she also made her payments at that location.  She submitted copies of her mortgage and closing documents.  <u>Hearing Exhibit</u> 1.  All these documents listed Beneficial's address as 3160 North Water, Suite E6, Decatur, Illinois.  Clay also testified that she was served with the Foreclosure Complaint and summons. <u>Transcript</u> at 7-8.  The summons and Foreclosure Complaint were admitted into evidence.  <u>Hearing Exhibit</u> 3. She also testified that her attorney was charging her $50.00 per hour. <u>Transcript</u> at 8.  Bourey's bill (Bill), which was admitted into evidence, stated that he was charging $150.00 per hour.  <u>Record</u>, Exhibit 14, <u>Hearing</u>

8

Exhibit 5.[2]

On cross-examination, Clay stated that Beneficial had not contacted her after serving her with the summons and Foreclosure Complaint. She also stated that she had not seen her attorney's Bill for services rendered in connection with the Contempt Motion. Clay's counsel confirmed that no judgment had been entered against her in the foreclosure proceeding. Transcript at 10-11.

Attorney Bourey's office manager then testified. She identified copies of correspondence and records of telephone messages between Attorney Bourey and Beneficial Bankruptcy Specialists Brown and Ceruantus. Id. at 11-15. The correspondence and telephone messages were admitted as evidence at the hearing. Hearing Exhibit 2.

Bourey then offered his Bill into evidence. Balsley stipulated to its admission. Balsley then attempted to call Bourey to the stand. Bourey objected. Balsley stated that she wanted to ask Bourey whether he had any communication with Beneficial prior to filing this Motion to Reopen the case for the purpose of filing a motion for contempt. He stipulated that he

---

[2]As quoted below, Balsley stipulated to the admission of the Bill into evidence. Transcript at 16.

did not.  Balsley then told the Court that Beneficial had nothing further

other than to ask the Bankruptcy Court to take judicial notice of the state

foreclosure proceeding.  The Bankruptcy Court did so.  <u>Transcript</u> at 16-17.

The parties then argued the Contempt Motion, and the Bankruptcy Court

took the matter under advisement.  <u>Transcript</u> at 17-20.

<u>THE OPINION BELOW</u>

The Bankruptcy Court issued the Contempt Order and its Opinion on

March 1, 2005.  <u>Record</u>, Exhibit 15 <u>Opinion</u>, and Exhibit 16 <u>Order</u>.  The

Court recited the facts that Clay received a discharge on June 7, 2004;

Beneficial filed the Foreclosure Complaint on August 25, 2004, and served

it on Clay; and Clay then filed her Contempt Motion.  The Bankruptcy

Court then said:

> Instead of quickly remedying the problem, Beneficial chose
> to contest the sufficiency of service and filed a motion to
> dismiss.  A hearing was held on October 7, 2004, and Beneficial
> appeared by attorney Ed Costa.  Despite a suggestion from the
> Court that the matter should be settled, the parties elected to
> file briefs on the issue of the sufficiency of service.

<u>Opinion</u> at 2.  The Bankruptcy Court continued reciting the history of the

case. The Bankruptcy Court concluded that the evidence presented, "clearly

demonstrated that Beneficial had violated the permanent injunction of §

524. The law is clear that a creditor may not seek an *in personam* deficiency judgment against a Debtor where the debt has been discharged.  <u>In re Simonetti</u>, 117 B.R. 708 (Bankr. M.D. Fla. 1990)." <u>Opinion</u> at 3 (emphasis in the original).

The Bankruptcy Court then addressed Beneficial's responses to the Contempt Motion.  The Bankruptcy Court stated that the responses, "range from weak to weaker." <u>Id.</u>  The Bankruptcy Court described Beneficial's statement that it had no record of Clay's bankruptcy as an "incredible assertion" in light of the communications between Bourey and Beneficial's Bankruptcy Specialists Brown and Ceruantus.  <u>Id.</u>

The Bankruptcy Court dismissed Beneficial's claim that Clay listed the wrong address for Beneficial on her bankruptcy petition.  The Bankruptcy Court stated that the 3160 North Water Street address that Clay listed in her bankruptcy petition was the address for Beneficial on Clay's Loan Summary, Settlement Statement, Truth-in-Lending Disclosures, Mortgages, Personal Credit Line Account Agreement, and Revolving Loan Vouchers. <u>Id.</u> at 4.

The Bankruptcy Court next rejected Beneficial's assertions that it immediately sought to amend the Foreclosure Complaint upon receiving the

11

Contempt Motion and that the Debtor's counsel should have contacted Beneficial before filing the Contempt Motion.   The Bankruptcy Court stated:

> Beneficial next asserts that "[f]ollowing receipt of the Motion, Beneficial foreclosure counsel immediately sought and obtained leave to file an amended foreclosure complaint deleting its prior request for an *in personam* judgment."   Beneficial's immediate action in this case was to file a motion to dismiss. Beneficial did not take action to correct the problem with its foreclosure complaint until the afternoon of October 7, 2004, after the Court's first hearing in this case.
>
> Beneficial complains that the Debtor's attorney did not contact Beneficial about its contemptuous conduct prior to filing its Motion for Contempt.   In light of Beneficial's failure to immediately correct the problem after the motion was filed, it seems unlikely that a simple phone call would have resolved the problem.   Indeed, even the filing of the contempt motion did not immediately spur Beneficial into action.   Beneficial only took corrective action after appearing in Court on the motion to dismiss.

<u>Id.</u> at 4-5.   The Bankruptcy Court concluded that Beneficial and it's counsel, Larson & Nierling, violated the Permanent Injunction, and did so willfully.   <u>Id.</u> at 5.   The Bankruptcy Court found no actual damage.   The Bankruptcy Court, however, awarded fees in the sum of $1,650.00.   These represented the fees set forth in Bourey's Bill admitted into evidence, plus an additional $150.00 for his attendance at the February 3, 2005, hearing.

The Bankruptcy Court commented, "The failure of the foreclosure attorney to strike the personal deficiency language from the foreclosure complaint causes myriad problems for honest but unfortunate debtors and requires that some action be taken by the debtor." Id. at 6. The Bankruptcy Court found that the fees were appropriate in this case because of the actions of Beneficial's "sloppy legal work." Id. The Bankruptcy Court stated:

> [T]he record in this proceeding shows that it is Beneficial's attorneys who have tried to milk every penny in attorney's fees in this case as was humanly possible. Beneficial ran up the attorney's fees in this proceeding by not immediately correcting its error when it received the contempt motion, by filing a motion to dismiss that had technical merit but did nothing to advance the resolution of the case, by filing a response that was full of inaccuracies, by contacting a local attorney at the last minute to cover a hearing and sending him to court totally unprepared for the hearing, and requiring three hearings on a matter that should have been resolved with one hearing. Under these circumstances, attorney's fees of $1650 for the Debtor's attorney are quite reasonable.

Id. at 6-7.

The Bankruptcy Court ordered Beneficial and Larson & Nierling to: (1) pay Clay $1650.00 for her attorney fees; (2) delete any and all references to an in personam judgment against Clay in the state court foreclosure action; and (3) serve copies of the Bankruptcy Court's Opinion

on Beneficial's President and CEO, "so that these officers may learn of the mistakes and have an opportunity to order corrections in procedures so that these mistakes may be avoided in the future." <u>Order</u> at 1.

ANALYSIS

Beneficial and Larson & Nierling raise five issues on appeal. They assert that the Bankruptcy Court erred by: (1) holding Beneficial responsible for the actions of its attorneys; (2) holding Larson & Nierling in contempt without notice and an opportunity to appear on its own behalf at the hearing; (3) finding that Beneficial and Larson & Nierling violated the Permanent Injunction willfully; (4) awarding attorneys fees that were not properly supported by the evidence, and were, in fact, imposed as a punitive sanction; and (5) requiring Beneficial to amend its pleadings in the foreclosure proceeding and to distribute the Bankruptcy Court's Contempt Order and Opinion to its President and Chief Executive Officer. <u>Record</u>, Exhibit 18, <u>Statement of Issues</u>.

This Court reviews legal issues <u>de novo</u>. <u>Matter of Sheridan</u>, 57 F.3d 627, 633 (7th Cir. 1995). Factual determination is reviewed under a clearly erroneous standard. <u>Bankruptcy Rule</u> 8013. Factual findings are clearly erroneous only if this Court is "left with the definite and firm conviction

that a mistake has been committed." Matter of Thirtyacre, 36 F.3d 697,

700 (7th Cir. 1994). Matters committed to the discretion of the Bankruptcy

Court are reviewed only for an abuse of discretion. Matter of Fortney, 36

F.3d 701, 707 (7th Cir. 1994).

A.    Beneficial's Responsibility for the Actions of its Attorneys

Beneficial can be held in contempt for the actions of its agents, such

as Larson & Nierling, performed within the scope of their agency.

Commodity Futures Trading Commission v. Premex, Inc., 655 F.2d 779,

784 (7th Cir. 1981); Shakman v. Democratic Organization of Cook County,

533 F.2d 344, 352 (7th Cir. 1976); In re Vazquez, 221 B.R. 222, 231

(Bankr. N.D. Ill. 1998). The Seventh Circuit has clearly stated in another

context that a client should be held responsible for its attorney's actions:

> Holding the client responsible for the lawyer's deeds ensures
> that both clients and lawyers take care to comply. If the
> lawyer's neglect protected the client from ill consequences,
> neglect would become all too common. It would be a free good--
> the neglect would protect the client, and because the client
> could not suffer the lawyer would not suffer either.

United States v. 7108 West Grand Ave., Chicago, Ill., 15 F.3d 632, 634 (7th

Cir. 1994), quoting Tolliver v. Northrop Corp., 786 F.2d 316, 319 (7th Cir.

1986).

15

In this case, Larson & Nierling, as attorneys for Beneficial, violated the Permanent Injunction by filing Beneficial's suit against Clay for a personal deficiency judgment on a discharged debt, and serving Clay with a summons and the Foreclosure Complaint.  The contemptuous action was within the scope of the firm's agency as Beneficial's attorneys.  Beneficial can properly be held in contempt for the actions of its agent.

Beneficial argues that it can only be held liable for Larson & Nierling's actions if it had notice and opportunity to avoid the contemptuous conduct.  The cases relied on by Beneficial, however, address whether a corporate officer can be held personally liable for the contemptuous conduct of the corporation.  <u>United States v. Greyhound Corp.</u>, 363 F.Supp. 525, 571-72 (N.D.Ill. 1973); <u>Bigelow v. RKO Radio Pictures</u>, 78 F.Supp. 250, 257-58 (N.D.Ill. 1948).  Neither addresses the liability of a principal for the actions of its agent.  The Bankruptcy Court properly held Beneficial in contempt based on the actions of its agent, Larson & Nierling.  <u>Premex, Inc.</u>, 655 F.2d at 784; <u>Shakman</u>, 533 F.2d at 352.

B.    <u>Larson & Nierling's Right to Notice and Hearing</u>

The Bankruptcy Court erred in also holding Larson & Nierling in contempt without first giving the firm notice and an opportunity to be

16

heard on its own behalf.  A party charged with civil contempt is entitled to the same due process as other civil litigants unless the contempt is committed in the presence of the Court.  Matter of Grand Jury Proceedings Empanelled May 1988, 894 F.2d 881, 886 (7th Cir. 1989).   The contemptuous conduct here did not occur in the Bankruptcy Court's presence.  The firm, thus, was entitled to notice and a hearing.  The matter will therefore be remanded to give Larson & Nierling the due process to which it is entitled.

C.    Beneficial's Willful Violation of the Permanent Injunction

The Bankruptcy Court found that Beneficial, through Larson & Nierling, willfully violated the Permanent Injunction.[3]  The Bankruptcy Court based this conclusion on its findings that: (1) Beneficial had notice of Clay's bankruptcy before it filed the Foreclosure Complaint; and (2) Beneficial delayed and avoided correcting the contemptuous conduct even after Clay had filed the Contempt Motion.  These findings are not clearly erroneous.

---

[3]The Court does not address whether the Bankruptcy Court could have awarded attorney fees without a finding of wilfulness.  See Premex, Inc., 655 F.2d at 784 n.9, 785 n.11 (civil contempt generally does not require a finding of wilfulness).  But cf., In re Federal Facilities Realty Trust, 227 F.2d 657, 658 (7th Cir. 1955)(wilfulness is a major consideration in determining whether to award attorney fees in contempt proceedings).

1.    <u>Beneficial Had Notice of Clay's Bankruptcy</u>

The evidence supports the Bankruptcy Court's conclusion that Beneficial had notice of Clay's bankruptcy. Clay listed Beneficial as a secured creditor in her initial bankruptcy filings. Clay listed the address that appeared on her mortgage and closing documents as Beneficial's address in her initial bankruptcy filings. Thereafter, Beneficial Specialists Brown and Ceruantus attempted to negotiate a reaffirmation agreement with Bourey. Beneficial representatives clearly knew that Clay had filed bankruptcy. Even with this knowledge, Beneficial, through it's counsel Larson & Nierling, commenced an action against Clay personally for a deficiency judgment.

Beneficial, rather incredibly, continues to argue that it did not have notice of Clay's bankruptcy. Beneficial states in its brief that "Nothing in the record suggests that Beneficial's conduct was anything other than a failure to review bankruptcy records to determine whether Clay might have commenced a bankruptcy action somewhere in the United States." <u>Brief of Appellant (d/e 5)</u> at 7. This is simply wrong. Beneficial did not need to scour bankruptcy records across the United States. Beneficial's Bankruptcy Specialists Brown and Ceruantus knew that Clay had filed bankruptcy.

Beneficial clearly had notice of Clay's bankruptcy.

Beneficial also repeatedly claims that suing Clay personally was only a "technical" violation of the Permanent Injunction.  <u>See</u>, <u>e.g.</u>, <u>Record</u>, Exhibit 18, <u>Statement of Issues</u>, ¶¶ 1 & 2; <u>Brief of Appellant</u> at 1, 3, 6 & 7. This was not a technical violation.  Congress enacted § 524 and its predecessor, § 14(f) of the Bankruptcy Act of 1970, specifically to put the burden on creditors like Beneficial to stop filing actions to collect discharged debts.  <u>See</u> <u>Cox</u>, 239 F.3d at 915.  Before § 14(f) was enacted, a discharge was only an affirmative defense.  <u>Id.</u>  Section 14(f), and now § 524, imposed the Permanent Injunction to relieve debtors from the obligation of defending against actions to collect discharged debts.  The Permanent Injunction put the onus on the creditor not to file the collection action at all.  Beneficial filed the action against Clay personally to collect a discharged debt, thereby forcing Clay to take some action to defend herself.  This is a clear violation of the Permanent Injunction.  Beneficial did so, through Larson & Nierling, even though it had notice of Clay's bankruptcy.

    2.   <u>Beneficial Delayed and Avoided Remedying its Violation of the Permanent Injunction</u>

The Bankruptcy Court also based its finding of wilfulness on its

determination that Beneficial delayed taking action to remedy the violation of the Permanent Injunction.  This finding also is not clearly erroneous. Beneficial filed the Motion to Dismiss the Contempt Motion and hired local counsel to attend the October 7, 2004, hearing on the Contempt Motion before filing the Motion to Amend later that day.  One could infer that Beneficial filed the Motion to Amend only after it had failed to defeat the Contempt Motion at the first hearing.  The fact that Beneficial waited until after the October 7, 2004, hearing to file the Motion to Amend supports the Bankruptcy Court's conclusion that Beneficial delayed taking steps to correct its contemptuous conduct.

The amendment to the Foreclosure Complaint also did not remedy the violation of the Permanent Injunction because the amendment did not delete the allegation that Clay was liable for the deficiency.  Rather, the Amended Foreclosure Complaint alleged that Clay was liable for any deficiency, "to the extent not discharged in prior bankruptcy proceeding." Hearing Exhibit 4, Motion to Amend, ¶ 3(m).  This allegation leaves open the possibility that Beneficial might seek a deficiency judgment against Clay.  Such an allegation frustrates the purposes of § 524 in this case because Clay must still go to the trouble of defending herself in state court

to insure that no deficiency judgment will be entered.[4]

Beneficial argues that the Amended Foreclosure Complaint does not violate § 524. Beneficial asserts that, "Since a judgment could not be entered for relief not requested, at most an *in personam* deficiency judgment could have been entered against Debtor *only* to the extent not discharged by Debtor's bankruptcy case." Reply Brief (d/e 11) at 4 (emphasis in the original). Beneficial is incorrect because a state court cannot enter a final judgment that recites that Clay is liable for a sum certain "only to the extent not discharged in bankruptcy." A final judgment must resolve all issues and determine and fix the rights of the parties absolutely. Board of Trustees of Community College Dist. No. 508 v. Rosewell, 262 Ill.App.3d 938, 635 N.E.2d 413 (1992); Mar Cement, Inc. v. Diorio Builders, Inc., 153 Ill.App.3d 798, 506 N.E.2d 381 (1987). An order that says that Clay is liable for a sum certain unless she is not, does not fix the rights of the parties absolutely and is not a final judgment.

To enter a final judgment on the Amended Foreclosure Complaint, the

---

[4]The Court does not address whether an allegation like this would violate the Permanent Injunction in circumstances in which the creditor has a good faith basis to question whether the debt has been discharged in bankruptcy. In this case, however, Beneficial knew that Clay had received a discharge when it filed the Motion to Amend.

state court must adjudicate whether Beneficial's claim for a deficiency judgment against Clay was discharged in bankruptcy. The Amended Foreclosure Complaint, thus, still puts at issue whether Clay is liable for a discharged debt. She still must defend herself against the Amended Foreclosure Complaint, the precise result that Congress sought to avoid by enacting § 524. Beneficial's failure to remedy its contemptuous conduct further supports Bankruptcy Court's conclusion that Beneficial wilfully violated the Permanent Injunction. The finding of wilfulness is not clearly erroneous.

D.    The Award of Attorney Fees

The award of attorney fees for civil contempt is within the discretion of the Bankruptcy Court. Tranzact Technologies, Inc. v. 1Source Worldsite, 406 F.3d 851, 856 (7th Cir. 2005). Based on the record, the Court cannot say that the Bankruptcy Court abused its discretion. As quoted above, Clay's attorney Bourey submitted his Bill and offered to testify unless Beneficial's counsel would stipulate. Beneficial stipulated to the admission of the Bill.[5] The Bill shows $1,500.00 in fees and the time expended. The

---

[5]Beneficial notes that Balsley attempted to question Bourey on the stand as a witness at the February 3, 2005, hearing, but Bourey objected. Brief of Appellant at 4. The Bankruptcy Court, however, never ruled on that objection. Rather, Balsley

Bill shows that the rate was $150 per hour.  The Bankruptcy Court added one hour for the February 3, 2005, hearing, to reach the $1,650.00 figure.

The Bankruptcy Court awarded the full amount of fees because it found that Beneficial caused the fees to reach the level of $1,650.00.  This finding was not clearly erroneous.  Beneficial elected to contest service before addressing the merits of the Contempt Motion.  Beneficial had every right to contest service, but that strategic decision increased costs. Beneficial's Response inaccurately asserted that: (1) Beneficial had no notice of Clay's bankruptcy; and (2) Clay listed an incorrect address for Beneficial in her initial bankruptcy filings.  Bourey had to disprove these inaccuracies to the Bankruptcy Court, thereby again increasing costs.  Beneficial sent an unprepared lawyer to the January 10, 2005, hearing, thereby forcing a third hearing.  That also increased costs.  Perhaps most importantly, Beneficial failed to amend the Foreclosure Complaint effectively to remedy the violation of the Permanent Injunction.  Clay, thus, had to press her Contempt Motion in order to secure complete relief.  Given the

---

indicated that she had only one question for attorney Bourey, whether he called Beneficial before filing the Contempt Motion.  He stipulated that he never tried to contact Beneficial before filing the Contempt Motion.  The Bankruptcy Court asked Balsley whether she had anything more, and she said no, other than taking judicial notice of the state foreclosure proceeding.  The Bankruptcy Court, therefore, did not preclude Beneficial from examining Bourey about the Bill.

circumstances, the Bankruptcy Court did not clearly err in determining that the relatively high amount of Clay's attorney fees was attributable primarily to Beneficial's actions. The Bankruptcy Court, therefore, did not abuse its discretion in awarding the full amount of fees.

Beneficial argues that the court erred because Bourey's rate was only $50 per hour, not $150 hour. Clay testified that Bourey's rate was $50 per hour. The Bill, however, stated that the rate was $150 per hour. Beneficial stipulated to the admission of the Bill into evidence. The evidence of Bourey's hourly rate, therefore, was conflicting. The Bankruptcy Court was in the best position to resolve this factual dispute. This Court cannot say that the Bankruptcy Court's resolution of this conflict in the evidence was clearly erroneous.

Beneficial also argues that Clay could have avoided incurring any fees if she had simply called Beneficial first before filing the Contempt Motion. The Bankruptcy Court rejected this argument. This finding is not clearly erroneous. Beneficial's first reaction to the Contempt Motion was to file the Motion to Dismiss challenging service. Beneficial filed the Motion to Amend only after the first hearing on the Motion to Dismiss. Beneficial's amendment to the Foreclosure Complaint further did not remedy the

violation of the Permanent Injunction.  Beneficial also did not present any evidence at the February 3, 2005, hearing that it would have amended the Foreclosure Complaint with just a telephone call from Bourey.  Given these facts, the Bankruptcy Court did not clearly err in concluding that Clay could not have resolved the matter with a phone call.  The Bankruptcy Court could reasonably conclude that Clay needed to press the Contempt Motion to stop the contemptuous conduct.

Beneficial argues that the Bankruptcy Court erred in awarding $1,650.00 in attorney fees because Clay did not present evidence that the services were "actually, reasonably, and necessarily provided to the estate." Brief of Appellant at 7.  This is the legal standard for awarding fees as administrative expenses to be paid out of the bankruptcy estate.  11 U.S.C. § 330.  These attorney fees were awarded as a compensatory sanction for Beneficial's civil contempt and have nothing to do with administrative expenses in Clay's bankruptcy.

Beneficial argues that one-third of the fees were the fault of attorney Bourey because he served the Contempt Motion improperly the first time. Brief of Appellant at 8.  Beneficial also disputes the reasonableness of the $150.00 billing rate and challenges certain ambiguities in the details set

forth in the Bill.  <u>Reply Brief</u> at 10-11.  Beneficial did not raise these arguments below.  <u>Transcript</u> at 16-20.  Since Beneficial did not raise these issues below, it cannot raise them for the first time on appeal.  <u>Matter of Establishment Inspection of Microcosm</u>, 951 F.2d 121, 126 (7th Cir. 1991).

Beneficial also argues that the Bankruptcy Court imposed a punitive sanction to make an example of Beneficial for other secured creditors. Beneficial cites numerous comments by the Bankruptcy Court that a message needed to be sent to Beneficial and other creditors to stop seeking deficiency judgments against debtors who have received discharges.  The Bankruptcy Court clearly was concerned with getting Beneficial's attention. The Bankruptcy Court also stated that a problem exists regarding secured creditors filing actions in violation of § 524.  But, the Bankruptcy Court did not fine Beneficial.  The Bankruptcy Court only awarded the fees actually incurred.  This Court cannot say that the Bankruptcy Court abused its discretion in awarding that sum as a compensatory sanction for civil contempt.  The record does not support the conclusion that the award was punitive.  <u>See</u> <u>Premex, Inc.</u>, 655 F.2d at 785-86.

E.    <u>The Non-Monetary Relief</u>

Beneficial challenges the Bankruptcy Court's direction to delete all

references to an _in personam_ judgment against Clay from the state foreclosure proceedings. The Bankruptcy Court has broad discretion to fashion a remedy based on the nature of the harm and the probable effect of alternative sanctions. _Connolly v. J.T. Ventures_, 851 F.2d 930, 933 (7th Cir. 1988). As explained above, the Amended Foreclosure Complaint still forces Clay to defend herself in state court. Section 524 was intended to relieve her of that burden. Given the purposes of § 524, the Bankruptcy Court's direction to delete all reference to an _in personam_ judgment in the state foreclosure proceedings is well within the Bankruptcy Court's authority.

Beneficial makes no argument concerning the Bankruptcy Court's order to circulate the Order and Opinion to Beneficial's President and CEO. This issue is thus waived on appeal.

THEREFORE, the Court reverses the Bankruptcy Court's determination that Larson & Nierling was in contempt of the Permanent Injunction. The remainder of the Bankruptcy Court's March 1, 2005, Order is affirmed. The case is remanded to provide Larson & Nierling the appropriate notice and a hearing to consider whether the firm should also be held in contempt.

IT IS THEREFORE SO ORDERED.

ENTER:   June 22, 2005.

      FOR THE COURT:


          _____s/  Jeanne E. Scott_____
          JEANNE E. SCOTT
          UNITED STATES DISTRICT JUDGE